[Cite as *State v. English*, 2015-Ohio-3227.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101883**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CIERRA ENGLISH

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART,
REVERSED IN PART AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-575406-A

**BEFORE:** E.A. Gallagher, P.J., Kilbane, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** August 13, 2015

**ATTORNEY FOR APPELLANT**

Richard H. Drucker
820 West Superior Ave.
Suite 800
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Christine M. Vacha
Assistant Prosecuting Attorney
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113

EILEEN A. GALLAGHER, P.J.:

{¶1} Defendant-appellant Cierra English appeals her convictions for felonious assault in the Cuyahoga County Court of Common Pleas. English argues that she was denied effective assistance of counsel, that the trial court failed to merge allied offenses of similar import and that the trial court erred in imposing consecutive sentences. For the following reasons, we affirm in part, and reverse in part.

{¶2} English was indicted for three counts of felonious assault. The case proceeded to a jury trial where the following facts were elicited: on May 18, 2013, English struck Mark Lavender and Raymond Fisher with her Chevy Camaro as they were exiting a parking lot and walking to Larry Flynt's Hustler Club where English worked. English struck the men from behind as she exited the parking lot in her vehicle, did not slow down after impact with them and dragged Fisher beneath her car for a short distance. Fisher was seriously injured as a result. The incident was captured on surveillance video.

{¶3} It was established at trial that English and Fisher had a romantic relationship that had ended on or about May 6, 2013. English testified that she believed that Fisher had been stalking her in the days prior to May 18. All four tires of English's vehicle had been slashed on May 16 and, while she was working at the Hustler Club the night of the incident, a tire on her vehicle was slashed in the parking lot across from the club. An employee of the club replaced the slashed tire with a spare and English left the club around 3 a.m. crying and "acting a little hysterical." Lavender and Fisher arrived in the

parking lot across the street from the club at approximately the same time but there was no interaction between the parties. As Lavender and Fisher were walking in the parking lot and approaching the street, English, who was leaving in her vehicle, saw them. English testified that she had been upset due to the tire slashing and when she saw Fisher, she panicked. She testified that the men "appeared out of nowhere in front of my vehicle" and she wanted to get away from Fisher. She claimed that she did not intend to hit Fisher but instead wanted to speed past him and drive as fast as she could to get away from him.

{¶4} After striking the men and dragging Fisher, English did not stop or alert authorities but rather drove from the scene. Although she initially testified that she did not know that she had struck the men with her car, she later admitted knowledge of the contact because she had her mother call the police and local hospitals to check on Fisher's condition.

{¶5} The jury returned a verdict of guilty on all three counts of felonious assault. The trial court imposed prison terms of five years on counts one and two and a two-year prison term on Count 3. The prison terms for Counts 1 and 2 were ordered to be served concurrently but the two-year prison term for Count 3 was ordered to be served consecutively to the five-year terms in Counts 1 and 2 for an aggregate prison sentence of seven years. English appeals.

{¶6} In her first assignment of error, English argues that she was denied effective assistance of counsel when her trial counsel failed to turn over certain text messages in

response to the state's demand for discovery resulting in the text messages being excluded at trial. English also argues that her counsel was ineffective for failing to subpoena a witness she claims saw Fisher in the parking lot earlier in the evening of May 17, the police officer who allegedly took the statement of the witness and a private investigator hired by English's family.

{¶7} We are unable to consider the merits of English's assignment of error because her arguments rely upon evidence outside the record. We do not have the benefit of a transcript of the alleged text messages or affidavits from the alleged witness and private investigator from which to evaluate the actions of English's trial attorney or any prejudice she may have suffered. If an ineffective assistance of counsel claim concerns facts that are outside the record, an appellate court cannot consider the claim on direct appeal because a court can only consider matters contained in the record. *State v. Johnson*, 2015-Ohio-96, 27 N.E.3d 9, ¶ 53 (8th Dist.), citing *State v. Madrigal*, 87 Ohio St.3d 378, 391, 2000-Ohio-448, 721 N.E.2d 52. A postconviction action, rather than a direct appeal, is the proper mechanism for asserting an ineffective assistance of trial counsel claim that is based on evidence de hors the record. *State v. Cooperrider*, 4 Ohio St.3d 226, 228-229, 448 N.E.2d 452 (1983); *State v. Curtis*, 8th Dist. Cuyahoga No. 89412, 2008-Ohio-916.

{¶8} English's first assignment of error is overruled.

{¶9} In her second assignment of error, English argues that the trial court erred in failing to merge Counts 1 and 2 as allied offenses of similar import. Counts 1 and 2

charged English with felonious assault against Raymond Fisher in violation of R.C. 2903.11(A)(1) and (A)(2) respectively. Count 1 charged English with causing Fisher serious physical harm and Count 2 charged her with causing Fisher physical harm by means of a deadly weapon, to wit: a motor vehicle. Count 3 charged English with causing physical harm to Mark Lavender by means of a deadly weapon, to wit: a motor vehicle.

{¶10} English failed to raise the issue of allied offenses at sentencing and, therefore, has forfeited all but plain error. *State v. Rogers*, Slip Opinion No. 2015-Ohio-2459, ¶ 3. English has the burden to "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus * * *." *Id*.

{¶11} R.C. 2941.25(A) allows only a single conviction for conduct that constitutes "allied offenses of similar import." Pursuant to R.C. 2941.25(B), a defendant charged with multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *State v. Ruff*, Slip Opinion No. 2015-Ohio-995, ¶ 13, citing *State v. Moss*, 69 Ohio St.2d 515, 519, 433 N.E.2d 181 (1982).

{¶12} In *Ruff* the Ohio Supreme Court recently clarified the test a trial court and a reviewing court must employ in determining whether offenses are allied offenses that merge into a single conviction, stating:

When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses (1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm; (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct

that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Id.* at ¶ 24-26.

{¶13} In determining if two or more offenses were committed with a separate animus this court in *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, stated:

[T]he issue of whether two offenses are allied depends not only on whether the two crimes were committed in the same act, but also with a single state of mind. The Ohio Supreme Court has defined the term "animus" to mean "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). Because animus is often difficult to prove directly, it may be inferred from the surrounding circumstances. When "an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, a priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime." *Id.*

> Thus, when determining whether two offenses were committed with a separate animus, the court must consider (1) whether the first offense was merely incidental to the second offense or whether the defendant's conduct in the first offense demonstrated a significance independent of the second, and (2) whether the defendant's conduct in the first offense subjected the victim to a substantial increase in the risk of harm apart from that involved in the second offense. *State v. Shields*, 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912, ¶ 17.

*Id*. at ¶ 34 and 35.

**{¶14}** English argues that the felonious assaults pertaining to Fisher were allied offenses committed with the same conduct and animus and did not produce separate identifiable harm to Fisher. The state argues, that while the injury to Fisher may appear to be a single act, it can be broken down into "sub-acts occurring closely in time," evidencing separate animuses. The state argues that the first act occurred when English struck Fisher and the second act when English proceeded to drive over his body. The state argues that even if English panicked leading to her initial striking of Fisher, she should have been aware of his body beneath her car as she continued to drive without stopping. Therefore, the state believes she exhibited a separate animus.

**{¶15}** We do not find the state's argument persuasive in this instance. The state offers no argument that the two offenses resulted in separate and identifiable harm and instead asserts that English possessed a separate animus for the two convictions. The surveillance video reveals that the entire incident from the point where English struck Fisher to when he was released from beneath her car occurred over a period of six seconds. Fisher was underneath the car for at least five of those seconds. It is difficult to find that a separate animus occurred in the mind of English in the less than one second

between when she struck Fisher and when his body fell beneath the vehicle. This is an instance where the first offense was merely incidental to the second offense.

{¶16} We find that English has demonstrated plain error and the offenses must be merged.

{¶17} English's second assignment of error is sustained.

{¶18} In her third assignment of error, English argues that the trial court erred in imposing consecutive sentences. When reviewing a felony sentence, we follow the standard of review set forth in R.C. 2953.08(G)(2), which provides in relevant part:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

*Id.*

{¶19} A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control and sentences a defendant within the permissible statutory range. *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

{¶20} R.C. 2929.14(C)(4) authorizes the court to require an offender to serve multiple prison terms consecutively for convictions on multiple offenses. Consecutive sentences can be imposed if the court finds that (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender and (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition to these two factors, the court must find any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the

multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses

of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

**{¶21}** A trial court is not "required to give a talismanic incantation of the words in the statute" to satisfy its obligation. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. "[A] word-for-word recitation of the language of the statute is not required, as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentencing should be upheld." *Id*. at ¶ 29. A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *State v. Evans*, 8th Dist. Cuyahoga No. 100151, 2014-Ohio-3584, ¶ 30.

**{¶22}** In this instance, the trial court made the required findings to impose consecutive sentences by stating a near word-for-word recitation of the statute. The court found that pursuant to R.C. 2929.14(C)(4)(b) the harm caused by English's conduct was so great or unusual that no single prison term for any of the offenses would adequately reflect the seriousness of her conduct. English focuses on an inconsequential reference by the trial court to her having committed "more than two offenses" as part of

its finding under R.C. 2929.14(C)(4)(b) and, English reasons, that because two of her three offenses should have merged as allied offenses, the court's consecutive-sentence finding is defective. We disagree. The statute requires only *two* offenses and even with our remand for merger pursuant to the second assignment of error, English committed two offenses. Furthermore, the trial court explained very clearly that its R.C. 2929.14(C)(4)(b) finding was reliant upon the fact that English's conduct harmed two separate victims. Therefore, we find no error in the trial court's R.C. 2929.14(C)(4)(b) finding.

**{¶23}** Next, English argues that the trial court failed to make a finding that her conduct was "so offensive" and "proportionate." Such findings are not required by the statute and as we previously noted, the trial court made the appropriate findings. Although English argues that the trial court failed to consider the mitigating circumstances of her case, the record reflects significant and careful consideration of all sentencing factors by the trial court. The court noted that while mitigating factors did exist, English's conduct caused significant harm: two separate victims were injured, one of whom was paralyzed without the use of his legs for several months and suffered permanent physical harm.

**{¶24}** English's third assignment of error is overruled.

**{¶25}** The judgment of the trial court is affirmed, in part, and reversed, in part. Case remanded for merger of allied offenses consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
MARY J. BOYLE, J., CONCUR